OPINION
OF THE JUSTICES OF THE SUPREME JUDICIAL COURT
GIVEN UNDER THE PROVISIONS OF SECTION 3
OF ARTICLE VI OF THE CONSTITUTION
\* \* \* \* \* \*
QUESTIONS PROPOUNDED BY THE SENATE IN AN ORDER
DATED OCTOBER 28, 1957
ANSWERED OCTOBER 29, 1957

SENATE ORDER PROPOUNDING QUESTION

STATE OF MAINE

In Senate
October 28, 1957

WHEREAS, it appears to the Senate of the Ninety-Eighth Legislature that the following is an important question of law and the occasion is a solemn one; and

WHEREAS, the Ninety-Eighth Legislature proposed an amendment to the Constitution of Maine by the provisions of Chapter 159 of the Resolves of the Ninety-Eighth Legislature which act was favorably voted on by the people at a special election held on September 9, 1957, and by proclamation of the Governor became Section 14-A of Article IX of the Constitution of Maine on September 19, 1957; and

WHEREAS, under the authority of the amendment aforesaid there has been introduced and there is now pending before the Legislature Senate Paper 620, Legislative Document Number 1614, "An Act to Create the Maine Industrial Building Authority"; and

WHEREAS, it is important that the Legislature be informed as to the constitutionality of the proposed bill,

ORDERED, that in accordance with Section 3 of Article VI of the Constitution of Maine the Justices of the Supreme

Judicial Court are hereby respectfully requested to give the Senate their opinion on the following question:

## QUESTION

Would Senate Paper 620, Legislative Document Number 1614, "An Act to Create the Maine Industrial Building Authority," if enacted by the Legislature in its present form, be constitutional?

Name: Low

County: Knox

In Senate Chamber
Oct. 28, 1957
READ AND PASSED
Chester T. Winslow
Secretary

A true copy.
Attest:
Chester T. Winslow
Secretary of the Senate

FIRST SPECIAL SESSION

N I N E T Y - E I G H T H    L E G I S L A T U R E

**Legislative Document**                                    **No. 1614**

S. P. 620                         In Senate, October 28, 1957.
Presented by Senator Low of Knox. Committee on State Government suggested. 2,000 printed.

CHESTER T. WINSLOW, Secretary

STATE OF MAINE

IN THE YEAR OF OUR LORD NINETEEN
HUNDRED FIFTY-SEVEN

**AN ACT to Create the Maine Industrial Building Authority.**

**Emergency preamble.** Whereas, the inhabitants of the State of Maine on September 9, 1957 approved an amend-

ment to the Constitution of Maine pledging the credit of the State and providing for a bond issue for guaranteed loans for industrial purposes; and

Whereas, acts of the Legislature do not become effective until 90 days after adjournment, the following legislation is urgently necessary to foster, encourage and assist the physical location, settlement and resettlement of industrial and manufacturing enterprises within the State; and

Whereas, in order to carry out the will of the people of Maine as expressed in their approval of the Constitutional Amendment, the following legislation is vitally necessary to provide opportunities for gainful employment by the people of Maine and to insure the preservation and betterment of the economy of the State and its inhabitants; and

Whereas, in the judgment of the Legislature, these facts create an emergency within the meaning of the Constitution of Maine and require the following legislation as immediately necessary for the preservation of the public peace, health and safety; now, therefore,

Be it enacted by the People of the State of Maine, as follows:

**Sec. 1. R. S., c. 38-B, additional.** The Revised Statutes are hereby amended by adding thereto a new chapter to be numbered 38-B, to read as follows:

### 'CHAPTER 38-B.

### Maine Industrial Building Authority Act.

**Sec. 1. Title.** This chapter shall be known and may be cited as the "Maine Industrial Building Authority Act."

**Sec. 2. Purpose.** It is declared that there is a state-wide need for new industrial buildings to provide enlarged opportunities for gainful employment by the people of Maine and to this insure the preservation and betterment of the economy of the State and its inhabitants. It is further declared

that there is a need to stimulate a larger flow of private investment funds from banks, investment houses, insurance companies and other financial institutions including pension and retirement funds, to help satisfy the need for housing industrial expansion. Therefore, the Maine Industrial Building Authority is created to encourage the making of mortgage loans for the purpose of furthering industrial expansion in the State.

Sec. 3. Credit of State pledged. The Maine Industrial Building Authority is authorized to insure the payment of mortgage loans, secured by industrial projects, and to this end the faith and credit of the State is hereby pledged, consistent with the terms and limitations of section 14-A of Article IX of the Constitution of the State of Maine.

Sec. 4. Organization of authority. The Maine Industrial Building Authority hereinafter in this chapter called the authority, hereby created and established a body corporate and politic, is constituted a public instrumentality of the State, and the exercise by the authority of the powers conferred by the provisions of this chapter shall be deemed and held to be the performance of essential governmental functions. The authority shall consist of 9 members, including the Commissioner of Economic Development, and 8 members at large appointed by the Governor with the advice and consent of the Council for a period of 4 years, provided that, of the members first appointed, 2 shall be appointed for a term of one year, 2 for a term of 2 years, 2 for a term of 3 years and 2 for a term of 4 years. A vacancy in the office of an appointive member, other than by expiration, shall be filled in like manner as an original appointment, but only for the remainder of the term of the retiring member. Appointive members may be removed by the Governor with the advice and consent of the Council for cause. The authority shall elect one of its members as chairman, one as vice-chairman, one as treasurer, and shall employ a manager, who shall be

secretary. The secretary and treasurer shall be bonded as the authority shall direct. Five members of the authority shall constitute a quorum and the affirmative vote of a majority of members, present and voting, shall be necessary for any action taken by the authority. No vacancy in the membership of the authority shall impair the right of the quorum to exercise all rights and perform all the duties of the authority.

All the members of the authority shall be reimbursed for their actual expenses necessarily incurred in the performance of their duties.

The manager shall be appointed by the authority and his tenure of office shall be at the pleasure of the authority. He shall receive such compensation as shall be fixed by the authority with the approval of the Governor and Council.

The manager shall be the chief administrative officer for the authority and as such shall direct and supervise the administrative affairs and technical activities of the authority in accordance with rules, regulations and policies as set forth by the authority. It shall be the duty of the manager among other things to:

I.   To attend all meetings of the authority, and to act as its secretary and keep minutes of all its proceedings.

II.   To approve all accounts for salaries, per diems, allowable expenses of the authority or of any employee or consultant thereof, and expenses incidental to the operation of the authority.

III.   To appoint, under the provisions of the Personnel Law, such employees as the authority may require, and such assistants, agents or consultants as may be necessary for carrying out the purposes of this chapter.

IV.   To make to the authority an annual report documenting the actions of the authority, and such other reports as the authority may request.

V.   To maintain a close liaison with the Department of Economic Development and provide assistance to the various divisions of that Department to facilitate the planning and financing of industrial projects.

VI.   To make recommendations and reports in cooperation with the Department of Economic Development to the authority on the merits of any proposed industrial project, on the status of local industrial development corporations, and on meritorious industrial locations.

VII.   To perform such other duties as may be directed by the authority in the carrying out of the purposes of this chapter.

Sec. 5.   Definitions.   As used in this chapter, the following words and terms shall have the following meanings unless the context shall indicate another or different meaning or intent:

I.   "Cost of project" shall mean the cost or fair market value of construction, lands, property rights, easement, franchises, financing charges, interest, engineering and legal services, plans, specifications, surveys, cost estimates, studies and other expenses as may be necessary or incident to the development, construction, financing and placing in operation of an industrial project.

II.   "Federal Agency" shall mean and include the United States of America, the President of the United States of America, and any department of, or corporation, agency or instrumentality heretofore or hereafter created, designated or established by the United States of America.

III.   "Industrial project" shall mean any building or other real estate improvement and, if a part thereof, the land upon which they may be located, and all real properties deemed necessary to their use by any industry for the manufacturing, processing or assembling of raw materials or manufactured products.

IV. "Local development corporation" shall mean any organization, incorporated under the provisions of chapter 54, sections 1 to 16, for the purposes of fostering, encouraging and assisting the physical location, settlement and resettlement of industrial and manufacturing enterprises within the State, and to whose members no profit shall enure.

V. "Maturity date" shall mean the date on which the mortgage indebtedness would be extinguished if paid in accordance with periodic payments provided for in the mortgage.

VI. "Mortgage" shall mean a mortgage on an industrial project and the term "first mortgage" means such classes of first liens as are commonly given to secure advances on, or the unpaid purchase price of, real estate under the laws of the State of Maine, together with the credit instruments if any, secured thereby.

VII. "Mortgagee" shall mean the original lender under a mortgage, and his successors and assigns approved by the authority and may include all insurance companies, trust companies and their commercial departments, banking associations, investment companies, savings banks, executors, trustees and other fiduciaries, including pension and retirement funds.

VIII. "Mortgagor" shall mean the original borrower under a mortgage and his successors and assigns, and shall be limited to local development corporations.

IX. "Mortgage payments" shall mean periodic payments called for by the mortgage, covering interest, installments of principal, taxes and assessments, mortgage insurance premiums and hazard insurance premiums.

Sec. 6. Powers. The authority is authorized and empowered:

I.    To adopt by-laws for the regulation of its affairs and the conduct of its business;

II.    To adopt an official seal and alter the same at pleasure;

III.    To maintain an office at such place or places within the State as it may designate;

IV.    To sue and be sued in its own name, plead and be impleaded;

Any and all actions at law or in equity against the authority shall be brought only in the county of Kennebec and service of process in any action shall be made by service upon the manager of said authority either in hand or by leaving a copy of the process at the office of the manager;

V.    To employ such assistant, agents, consultants and other employees as may be necessary or desirable for its purposes and to fix their compensation; and to utilize the services of other governmental agencies; such employment shall be consistent with the Personnel Law;

VI.    To enter into agreements with prospective mortgagees and mortgagors, for the purpose of planning, designing, constructing, acquiring, altering and financing industrial projects;

VII.    To acquire, hold and dispose of real and personal property and make and enter into all contracts, leases, agreements and arrangements necessary or incidental to the performance of its duties and the execution of its powers under the provisions of this chapter;

VIII.    To accept from a federal agency, loans or grants for the planning or financing of any industrial project, and to enter into agreements with such agency respecting any such loans or grants;

IX.   In connection with the insuring of payments of any mortgage, to require for its guidance a finding of the planning board of the municipality in which the industrial project is proposed to be located, or of the regional planning board of which such municipality is a member, as to the expediency and advisability of such project;

X.   To do all acts and things necessary or convenient to carry out the powers expressly granted in this chapter.

Sec. 7.   Local development corporations.   When a local development corporation does not meet mortgage payments insured by the authority by reason of vacancy of its industrial project, the authority, for the purpose of maintaining income from industrial projects on which mortgage loans have been insured by the authority and for the purpose of safeguarding the mortgage insurance fund, may grant the local development corporation permission to lease or rent the property to a responsible tenant for a use other than that specified in section 5, subsection III, such lease or rental to be temporary in nature and subject to such conditions as the authority may prescribe.

Sec. 8.   Mortgage insurance fund.

I.   There is hereby created an industrial building mortgage insurance fund, hereinafter in this chapter referred to as the "fund," which shall be used by the authority as a non-lapsing, revolving fund for carrying out the provisions of this chapter. This fund shall initially be the sum of $500,000. To this sum shall be charged any and all expenses of the authority, including interest and principal payments required by loan defaults and to the sum shall be credited all income of the authority, including mortgage insurance premiums and from the sale, disposal, lease or rental.

II.   Moneys in the fund not needed currently to meet the obligations of the authority in the exercise of its responsibilities as insurer as provided for in this chapter, shall be deposited with the Treasurer of State to the credit of the fund, or may be invested in such manner as is provided for by statute.

Sec. 9.   Insurance of mortgages.   The authority is authorized upon application of the mortgagee to insure mortgage payments required by a first mortgage on any industrial project, upon such terms and conditions as the authority may prescribe, provided the aggregate amount of principal obligations of all mortgages so insured outstanding at any one time shall not exceed $20,000,000. To be eligible for insurance under the provisions of this chapter a mortgage shall:

I.   Be one which is to be made and held by a mortgagee approved by the authority as responsible and able to service the mortgage properly;

II.   Involve a principal obligation, including initial service charges and appraisal, inspection and other fees approved by the authority, not to exceed $1,000,000 for any one project and not to exceed 90% of the cost of project;

III.   Have a maturity satisfactory to the authority but in no case later than 25 years from the date of the insurance;

IV.   Contain complete amortization provisions satisfactory to the authority requiring periodic payments by the mortgagor which shall include principal and interest payments, cost of local property taxes and assessments, land lease rentals if any, and hazard insurance on the property and such mortgage insurance premiums as are required under section 10;

V. Contain such terms and provisions with respect to property insurance, repairs, alterations, payment of taxes and assessments, default reserves, delinquency charges, default remedies, anticipation of maturity, additional and secondary liens, and other matters as the authority may prescribe.

Sec. 10. Mortgage insurance premiums. The authority is authorized to fix mortgage insurance premiums for the insurance of mortgage payments under the provisions of this chapter, such premiums to be computed as a percentage of the principal obligation of the mortgage outstanding at the beginning of each year. *Such premiums shall be payable by the mortgagees in such manner as shall be prescribed by the authority.

Sec. 11. Acquisition and disposal of property. The authority may take assignments of insured mortgages and other forms of security and may take title by foreclosures or conveyance to any industrial project when an insured mortgage loan thereon is clearly in default and when in the opinion of the authority such acquisition is necessary to safeguard the mortgage insurance fund, and may sell, or on a temporary basis lease or rent, such industrial project for a use other than that specified in section 5, subsection III.

Sec. 12. Authority expenses. The authority may in its discretion expend out of the fund such moneys as may be necessary for any expenses of the authority, including administrative, legal, actuarial and other services. All such expenses incurred by the authority shall be paid by the authority and when pertaining thereto shall be charged to the fund or to the appropriate industrial project or projects. Upon the issuance of mortgage insurance for any such project or projects, any expenses by the authority charged

* Such insurance premiums shall not be less than one-half of 1% per year nor more than 2% per year of said outstanding principal obligation.

thereto shall be reimbursed to the authority by the mortgagee from the proceeds of the mortgage. All proceeds received by the authority from the disposal by sale or in some other manner of property it may have acquired in accordance with section 11 shall be credited to the fund.

Sec. 13. Mortgages eligible for investment. Mortgages insured by the authority of this chapter are made legal investments for all insurance companies, trust companies and their commercial departments, banking associations, investment companies, savings banks, executors, trustees and other fiduciaries, pension or retirement funds.

Sec. 14. Records of account. The authority shall keep proper records of accounts and shall make an annual report of its condition to the State Banking Commissioner.

Sec. 15. Authority to provide funds. If from time to time in the opinion of the authority the addition of moneys to the mortgage insurance fund may be required to meet obligations, the authority shall in writing request the Governor and Council to provide moneys in such amounts as may be necessary for the purpose. The Governor and Council shall transfer to said fund sufficient moneys for said purpose from the State contingent account or from the proceeds of bonds to be issued as provided in this section. If bonds are to be issued, the Governor and Council shall order the Treasurer of State to issue bonds in the amount requested, but not exceeding in the aggregate $20,000,000 at any one time, to mature serially or made to run for such periods as the Governor and Council may determine, but none of them shall run for a longer period than 20 years, and at such rates of interest and on such terms and conditions as the Governor and Council shall determine. The bonds so issued shall be deemed a pledge of the faith and credit of the State.'

**Sec. 2. Appropriation.** For the establishment of the mortgage insurance fund, there is hereby appropriated $500,000 from the unappropriated surplus of the general fund.

**Sec. 3. R. S., c. 54, § 5, amended.** Section 5 of chapter 54 of the Revised Statutes is hereby amended by adding at the end thereof a new paragraph to read as follows:

'The limitations of this section as to the holding of real and personal property shall not apply to a corporation formed under the provisions of this chapter for the purpose of fostering, encouraging and assisting the physical location, settlement and resettlement of industrial and manufacturing enterprises within the State.'

**Emergency clause.** In view of the emergency cited in the preamble, this act shall take effect when approved.

The foregoing is a true copy of the original document presented by the sponsor and marked Senate Paper 620, Legislative Document 1614.

CHESTER T. WINSLOW
Secretary of the Senate

ANSWER OF THE JUSTICES

To the Honorable Senate of the State of Maine:

In compliance with the provisions of Section 3 of Article VI of the Constitution of Maine, we, the undersigned Justices of the Supreme Judicial Court, have the honor to submit the following answer to the question propounded on October 28, 1957.

QUESTION: Would Senate Paper 620, Legislative Document Number 1614, "An Act to Create the Maine Industrial Building Authority," if enacted by the Legislature in its present form, be constitutional?

ANSWER: We answer in the affirmative.

Our Constitution reads in Section 14-A as follows:

> " 'SECTION 14-A. For the purposes of fostering, encouraging and assisting the physical location, settlement and resettlement of industrial and manufacturing enterprises within the state, the legislature by proper enactment may insure the payment of mortgage loans on the real estate within the state of such industrial and manufacturing enterprises not exceeding in the aggregate $20,000,000 in amount at any one time and may also appropriate moneys and authorize the issuance of bonds on behalf of the state at such times and in such amounts as it may determine to make payments insured as aforesaid.' "

On examination of Senate Paper 620, Legislative Document Number 1614, we are of the view that the means chosen are reasonably adapted to carry out the purposes of Section 14-A of the Constitution and are otherwise constitutional.

Dated at Augusta, Maine, this 29th day of October, 1957.

Respectfully submitted:

ROBERT B. WILLIAMSON
DONALD W. WEBBER
ALBERT BELIVEAU
WALTER M. TAPLEY, JR.
FRANCIS W. SULLIVAN
F. HAROLD DUBORD